### Linda McCLAIN and Kristain Renae McClain, by her next friend and parent, Linda McClain

### v.

### Charles E. SMITH, Commissioner, Tennessee Department of Education; Eric Taylor, Commissioner, Tennessee Department of Mental Health and Mental Retardation; Earl Hoffmeister, Superintendent, Knox County Schools; and Bill Reynolds, Director, Adult Community Training, Inc.

### No. CIV–3–89–674.

United States District Court, E.D. Tennessee, N.D.

Oct. 30, 1989.

---

Charles W. Burson, Atty. Gen. and Reporter, Jane Young, Asst. Atty. Gen., Nashville, Tenn., for Charles Smith and Eric Taylor.

Robert Sharp, Nashville, Tenn., for Doe.

Gary Housepian, Nashville, Tenn., for DMHMR.

Richard T. Beeler, John E. Owings, Knox County Law Director, Knoxville, Tenn.

James H. Hickman, Knoxville, Tenn., for Adult Community Training, Inc.

## ORDER

HULL, District Judge.

This is an action under the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. § 1401 *et seq.*, brought on behalf of a severely retarded eighteen-year-old woman currently residing at Adult Community Training, Inc. (ACT), a group home in Loudon County, Tennessee. The plaintiffs have been advised that ACT intends to discharge Kristain Renae McClain (Kristi) at the end of this month and that there is no other residential, educational placement available for her. They have moved the Court for preliminary injunctive relief in the form of a "stay put" order pursuant to 20 U.S.C. § 1415(e)(3). (Doc. 2). Defendant Reynolds, the Director of ACT (Doc. 11); defendant Hoffmeister, Superintendent of Knox County Schools (Doc. 13); and State of Tennessee defendants Smith and Taylor (Doc. 15), have all filed motions to dismiss or for summary judgment.

Linda McClain and her daughter Kristi are permanent residents of Knox County, Tennessee. Accordingly, Knox County is the local entity responsible for Kristi's education. However, the Tennessee Department of Education is the agency ultimately responsible for the education for all handicapped students in Tennessee up to age twenty-two (22) pursuant to P.L.94–142 and EAHCA.

Kristi was admitted to the Greene Valley Developmental Center on August 24, 1988. On September 19, 1988, an Individualized Educational Program was developed for Kristi by Greene Valley educators and treatment staff. Knox County was notified that there would be an "M–Team"[1] meeting for this purpose but did not send a representative. A copy of Kristi's plan is attached to the plaintiff's complaint as Exhibit A. At the very top of the page, in a section entitled "Focus for Future," it is made clear that "Kristain will move to Level 2 group home at Loudon County by April of 1989." The rest of the plan indicates more specific educational and training goals such as learning to shampoo her hair, to dry her body, to wear her glasses, and to write numbers from one to ten.

On November 2, 1988, in an interim review of Kristi's progress, Greene Valley staff reported it to be in Kristi's best interest to be placed in a community setting in the Loudon County group home (ACT) rather than to be returned to her mother.

On February 15, 1989, Robert G. Erby, Assistant Superintendent for Residential Services at Greene Valley, wrote a letter to Earl Hoffmeister, Superintendent of Knox County Schools, which stated in pertinent part,

> Kristain Renae McClain, a school-age client of Knox County, was admitted to Greene Valley Developmental Center on August 24, 1988, on a six months training admission. She is scheduled to leave Greene Valley on February 28, 1989, for a residential placement in Loudon County, which will involve the school system again taking responsibility for her education.[2] An M–Team for Ms. McClain is scheduled for Wednesday, February 22, 1989, ... on the Greene Valley campus. An invitation is extended to you or someone from your staff to attend this meeting.

The M–Team meeting took place as scheduled with Knox County represented along with Mrs. McClain and educators and treatment staff from Greene Valley. The report from that meeting, which is Exhibit F to the plaintiff's complaint, reads as follows:

> The IDT met this date to discuss appropriate educational plan for Kristy. Kristy's academic needs were discussed. Mrs. Brady (mother) was in attendance and majority of her concerns centered on Kristy's nourishment, refusing meals, and losing weight. All present felt Kristy's needs could be handled very effectively at Adult Community Training at Loudon County group home. Kristy seems to be very pleased with this group home. Adult Community Training offers vocational (workshop) experience along with training on specified programs/objectives not considered vocational in nature. Kristy would be paid for her workshop efforts. Bill Reynolds (Adult Community Training Director) stated a willingness to follow programs/objectives outlined on IHP/IEP. The agreement was to move Kristain to Loudon County group home with inclusion in Adult Community day program on Tuesday, February 29, 1989. Kristy will be moving with five other ladies currently residing at Woodhaven training home. Thus, she will be living with peers with whom she has forged close ties.

As far as the Court can tell, Greene Valley had made a decision to transfer a group of six women from its Woodhaven Cottage to Loudon County. All of the women were Medicaid eligible patients and all but Kristi were over 22 years in age.

---

1. An M–Team (Multidisciplinary Team) is a special team of educators and individuals knowledgeable about the handicapped child who are mandated by the EAHCA to develop an individual education program for the child, identifying the necessary special education services and related services required to provide his/her "appropriate" education.

2. The Court is not clear on why Knox County (Kristi's local educational agency) was not taking responsibility for Kristi's stay at Greene Valley. Apparently the costs were shared by the Tennessee Department of Education (for the educational portion) and Medicaid (for the residential/psychiatric portion). There is no question that throughout the time Kristi was at Greene Valley, she was entitled to EAHCA funds from some entity for her education.

The record does not indicate any discussion about who would pay for the ACT placement. Only Kristi was eligible for EAHCA funds and none of the other residents at ACT were children. It is undisputed that ACT is not technically an educational agency and receives no educational funds. None of its staff are qualified to provide "educational services" as contemplated in the Tennessee Regulations for Certification of Teachers, for example. ACT subcontracts with the Tennessee Department of Mental Health and Mental Retardation to provide habilitation and vocational training to adults financially eligible for Medicaid in a less restrictive environment than that found at institutions like Greene Valley. However, Mr. Bill Reynolds, Director of Act, was present at Kristi's M–Team meeting in February and, according to the record of that session, indicated his willingness to follow the program and the modest educational objectives outlined in Kristi's Individualized Educational Program. If he thought his staff was not qualified to meet her educational needs, he did not mention it.

On March 1, 1989, Kristi and the other ladies from the Woodhaven cottage were transferred to ACT. Mrs. McClain was asked to and did sign a "Medicaid waiver" to facilitate her daughter's placement there. As far as the Court can tell, Mrs. McClain signed a similar form when her daughter was admitted to Greene Valley. This "waiver" somehow permits medical funds to be paid for a person who is not actually hospitalized.

On May 8, 1989, Mrs. McClain was billed for Kristi's room and board at ACT or that portion of her expenses not covered by Medicaid. Correctly believing that under the EAHCA all handicapped children are entitled to a free, appropriate public education, Mrs. McClain requested a due process hearing pursuant to the EAHCA. On June 2, 1989, before this hearing could take place, she received another bill from ACT.

On July 26, 1989, apparently pursuant to a pretrial order in the administrative process related to her requested hearing,

Knox County Schools convened another M–Team meeting. The report of that meeting, Exhibit M to the complaint, indicates that all concerned agreed that Kristi should remain at ACT. The report concludes,

> Knox Co. Schools recommends that Kristi receive a Special Day School educational program and that Mental Retardation Services should be responsible for the residential component. Residential services are needed for Kristi currently because of mental health not educational needs by themselves.

On August 22–23, 1989, the due process hearing was held before an Administrative Law Judge (ALJ) appointed by the Department of Education. Although the ALJ has yet to issue his written findings of fact, his comments made on the record are provided as Exhibit N to the complaint. He stated in open court that the M–Team meeting that Greene Valley had convened in February of 1989, was not really an M–Team meeting but a discharge meeting, or discharge program planning session. In addition, he found that Kristi's discharge from Greene Valley put her outside the protection of EAHCA and that her placement at ACT was not an "educational placement." He also indicated that until such time as Kristi was "M–Teamed" back into the educational system, no funds would be available either from the Department of Mental Health and Mental Retardation or from the Department of Education to defray Kristi's expenses and that they correctly fell upon Mrs. McClain. He declined to rule from the bench on the appropriateness (if any) of a residential educational placement for Kristi, indicating that he would require additional information before he could make that decision.

The ruling of the ALJ had the effect of nullifying the decision made at the July, 1989 M–Team meeting that Kristi would remain at ACT with Knox County bearing half of her expenses and the Department of Mental Health and Mental Retardation bearing the rest.

Almost immediately thereafter, on August 29, 1989, Mrs. McClain was notified by ACT that her daughter would be dis-

charged from its facility. In order to invoke the "stay put" provisions of the EAHCA, Mrs. McClain filed suit in this Court.

The letter notifying Mrs. McClain of Kristi's imminent discharge did not explain ACT's reason for discharging her after all parties had agreed that the placement was a good one. In his affidavit in support of ACT's motion to dismiss, its Director, Bill Reynolds explains,

> The rationale for the discharge was based upon the decision of the Administrative Law Judge at the conclusion of the due process hearing on August 22–23, 1989, that the placement of Kristain McClain at ACT was not an educational placement. Act believes, because of this ruling, that Kristain McClain is inappropriately served by the program and that a more appropriate program is available within a reasonable distance and that it is Knox County, Tennessee's responsibility to locate a more appropriate program, and that discontinuance of services is necessary because of a loss of funds, which ACT believes it will suffer if Knox County is ordered to pay for the educational services of Kristain McClain, this being due to Medicaid regulations which will cause Medicaid payment to ACT to stop.

In moving to be dismissed or for summary judgment, defendant Reynolds argues first that the Court lacks subject matter jurisdiction over him as Director of ACT. He points out that ACT is a private home for mentally retarded adults, not an educational facility subject to the provisions of EAHCA, and that EAHCA's "stay put" rights provided in 20 U.S.C. § 1415(e)(3) apply only to the "then current *educational* placement" (emphasis added) of the handicapped child. He also contends that Ms. McClain's action in federal court is premature because the ALJ has yet to render his final opinion in the administrative process. Finally, he points out that the injunctive relief requested is not really necessary because, as a Medicaid-eligible client of ACT, Kristi has appeal rights under T.C.A. § 33–1–202 relative to her discharge which, if properly exercised, will also prohibit her discharge prior to final resolution.

Knox County's motion to dismiss also contends that this action is untimely filed and that the Court lacks subject matter jurisdiction until the plaintiff has exhausted all her administrative remedies. The State of Tennessee defendants, Charles E. Smith and Eric Taylor make the same exhaustion argument to support their motion.

All the motions for summary judgment or to dismiss this action are hereby DENIED.

The Court agrees with the defendants that it is, indeed, premature for it to reach the question of whether or not Kristi McClain's residential placement is educationally necessary. The parties must first resolve that question at the administrative level.

■ However, whether it was appropriate or not, it is obvious from the record that Kristi McClain's placement at ACT was an *educational* placement. The M–Team that made out her original individualized educational plan at Greene Valley on September 19, 1988, specified as its long-range plan for her that she be moved to a "Level 2 group home at Loudon County by April of 1989." The Court presumes that none of the M–Team intended to divest her of EAHCA rights and privileges by this move. The interim review of Kristi's individualized plan made in November of 1988, reiterates the goal that she be moved to the Loudon County community setting rather than be returned to her home. The M–Team meeting at Greene Valley in February of 1989, at which Knox County participated, reported, "The IDT met this date to discuss appropriate educational plan for Kristy." The fact that the ALJ characterized this meeting as a discharge meeting rather than an M–Team meeting is irrelevant to the fact that the team met to discuss an appropriate educational plan. Again, the team determined that an appropriate educational plan for Kristi would be to move her to the Loudon County facility. The report specifies, "Adult Community Training offers vocational (workshop) experience along with training on specified programs/objectives not considered vocational

in nature.... Bill Reynolds (Adult Community Training Director) stated a willingness to follow programs/objectives outlined on IHP/IEP." ·

This is one of those unusual cases where all the professionals, and apparently the child and her mother, are happy with the placement choice. Apparently there has never been any disagreement that the kind of training and group living experience offered at ACT was the right education for Kristi. As far as the Court can tell, the only real problem is who should pay for it.

Because the Court finds that Kristi's placement at ACT was an educational placement (even if arguably a mistake because ACT is not an educational institution), the Court does have jurisdiction over this case and all the defendants.

In addition, because ACT has notified the parties of its intention to discharge Kristi, the motion for a stay put order cannot be considered premature.

Finally, because ACT relied upon the ALJ's ruling from the bench in the administrative proceedings rather than waiting for his written opinion, it cannot be heard to complain that Mrs. McClain initiated the appeal process before exhausting her administrative remedies. ACT, Knox County, and the State defendants all rely upon the ALJ's finding that the decision to move Kristi to ACT placed her outside the educational system and outside the protection of EAHCA. If they all treat the ALJ's oral ruling as a final ruling, the Court has a right to review it.

Accordingly, the Court hereby FINDS that the February 28, 1989, meeting at Greene Valley *was* an M–Team meeting; that, although it did not adopt any new individualized plan for Kristi, it followed the on-going plan of moving her to a less restrictive setting at ACT; and that her placement at ACT was, in fact, educational. For this reason, the ALJ's finding that neither Knox County nor the Tennessee Department of Mental Health and Mental Retardation have any financial responsibility for this placement is clearly erroneous. None of Kristi's expenses should be borne by Mrs. McClain or Kristi herself out of her Social Security funds.

Whether Kristi's placement at ACT is still educationally necessary should be determined at the administrative level and is certainly not ripe for judicial review. The fact that her placement at ACT entitles her to EAHCA funds up until such time as a determination is made to move her, should not endanger ACT's right to receive Medicaid funding. The Court stands ready to protect this right if necessary. Obviously, there are institutions, such as Greene Valley, that receive both EAHCA money and Medicaid. It is inconceivable to the Court that a similar arrangement cannot be made for Kristi if her M–Team continues to agree that ACT is the best placement for her.

In the meantime, until the parties have resolved the funding problem and have decided whether Kristi should remain at ACT or be moved to some other location, she will remain at ACT. Plaintiffs' motion for a "stay put" order pursuant to 20 U.S.C. § 1415(e)(3), is hereby GRANTED.